# E. D. C. HAINES

## v.

## JAMES E. CHANDLER ET AL.

*Mechanic's Lien—Contract to Furnish Lumber—Time—Parties—Amendments to Petition—Insolvency—Assignment of Part of Insolvent's Property to Apply on Particular Debt.*

1.   In the absence of an express contract limiting the time in which to furnish materials within three years, a mechanic's lien is not created in favor of one who furnishes materials unless they are, in fact, furnished within one year.

2.   Suit is begun as to parties brought in by amendment to a petition for a mechanic's lien at the time of such amendment.

3.   The act concerning voluntary assignments does not oblige every insolvent debtor to make a general assignment in conformity with its provisions, in order to appropriate his estate to the payment of a particular debt, nor prevent his preference of a particular creditor by any means that were previously lawful, excepting only a general assignment for the benefit of creditors.

4.   In the case presented, it is *held:* That the evidence does not show two distinct contracts; that as against a creditor and its representatives brought in by amendments to the petition, no lien can be enforced unless the last payment for materials became due within six months before such amendments were made; and that the conveyance of the property in question to trustees to be applied on a particular debt, was not within the act concerning voluntary assignments.

[Opinion filed November 18, 1887.]

APPEAL from the Circuit Court of McDonough County; the Hon. C. J. SCOFIELD, Judge, presiding.

Messrs. PRENTISS & BAILY, for appellant.

The last lumber furnished, as is shown by the exhibits, was September 15, 1884, being all furnished within three months after the contract was made.

The reason Haines was not specifically asked about these contracts, in his depositions, is on account of the agreement made between Haines and Chandler, in which Chandler agreed

that the lumber was bought as set forth in the petition, and that the exhibit to the petition is correct, which counsel at first supposed was sufficient proof of the matters in dispute. But, upon the trial, it was deemed necessary to prove the matter more specifically; hence Haines was put on the witness stand and testified as above set forth.

Messrs. C. F. WHEAT and D. G. TUNNICLIFF, for appellees.

PLEASANTS, J.    The original petition herein was filed by appellant January 23, 1885, against Jacob Hoover and James E. Chandler, to enforce a lien for material furnished by him for the erection of buildings and other improvements upon the fair grounds at Bushnell.

Hoover, the owner, had made to the Agricultural and Mechanical Association a lease of these grounds for fourteen years, and Chandler purchased the term.

The petition set forth that in June, 1883, after the purchase, Chandler arranged with petitioner, a lumber dealer, to furnish from time to time, as should be called for by his carpenters, such articles as he should have and they should need for the erection of these improvements; but no particular amount, kind, quality or price was then mentioned, nor any definite time for delivery or payment agreed on.

We understand that this was not, in the sense of the statute, an express contract, that is, one that expressly and definitely fixes its terms.    Granders v. Hartwell, 90 Ill. 324.    If it was, it did not create a lien, since it did not show that the time for furnishing all the material contracted for was not beyond three years from the commencement thereof.    Belanger v. Hersey, 90 Ill. 70.

And if it was implied, or partly implied, since the time for completing the delivery was not fixed or limited, it was equally necessary, in order to create a lien, that it should be in fact completed within one year from the commencement thereof. R. S., Ch. 82, Sec. 3; Driver v. Ford, 90 Ill. 595; Orr v. U. W. Mut. Life Ins. Co., 86 Ill. 260; Younger v. Loucks, 7 Ill. App. 280; Austin v. Wohler, 5 Ill. App. 300.

Under this arrangement, as was averred and proved, the petitioner began to deliver on June 19, 1883, and continued from time to time, according to call, until November, 1884, with only one considerable interval—from October 31, 1883, to July 20, 1884.

The copy of the account transcribed from his books and filed as an exhibit with the petition shows that the balance due for material delivered in 1883, being $500, was struck and carried forward on the book when he began to deliver in 1884.

But it is not intimated in the petition that any new or distinct arrangement was made between the parties in or for that year. The amount claimed is $9u8.20, as one balance on all the material delivered. The striking and carrying forward of the balance on the dealings of 1883 was the act of appellant alone, without the knowledge or consent of Chandler, and, so far as the petition and the exhibit show, is the only circumstance to indicate that he himself understood there were two contracts.

On the hearing, however, being recalled once and again to testify orally in his own behalf, he stated that Chandler saw him in July, 1884, and then made a like request as in June, 1883, and upon the basis of that statement counsel asked leave, after the court had announced its determination to dismiss the petition but before the order was written out, to amend it so as to make it show two distinct contracts. But in his deposition, read in evidence, he stated the fact as set forth in the original petition. and in his oral testimony, his attention being called to it, said he did not wish to change or modify it; and, further, that Chandler had also seen him in relation to the furnishing of this material on several other occasions not differing from that of July, 1884, which, yet, are not claimed to have made distinct contracts. There was no apparent occasion for another contract after that of June, 1883. That was intended to be broad enough to embrace all the material for all the improvements contemplated. No separate settle ment was made or asked for that delivered in 1883. Payments were made on account from time to time. The work was not completed. It was necessarily suspended by winter, but when

the season permitted and the usual time for holding agricultural fairs was drawing near it was to be resumed; and it was quite natural, after so long a suspension, that Chandler should specially notify the petitioner that calls for lumber were about to be again made. From his own testimony that may have been all that the interview of July, 1884, really amounted to. It does not appear that either party, at any time before all the lumber was delivered, had any thought of the lien law in connection with their dealing. Chandler's credit being then undoubted, petitioner took no care to frame the contract or make delivery with reference to the statutory security. It was doubtless because the court was constrained to find upon all the evidences that there were not two contracts that the proposed amendment was not allowed at that late day to be made. And if there were not, then the petitioner had no lien because the delivery was not completed within a year from its commencement. The petition was dismissed. .

It also appears that Chandler and his wife, by their deed of December 8, 1884, conveyed his interest in the fair grounds, with much other property, real and personal, therein specifically described, to Hays, Wheeler and Frisbie, in trust, to convert the same into money and apply it on account of his indebtedness to the Farmers National Bank of Bushnell, which had suspended payment and was in the hands of a receiver. The petition was amended, first, by making these trustees, and afterward the bank and the receiver also, parties defendant, but these amendments were not made until after six months from the delivery of the last item of the materials furnished. It is claimed that by the contract payment was due upon delivery. Claycomb v. Cecil, 27 Ill. 497; Brady v. Anderson, 24 Ill. 110. So that the right to enforce the lien, if any there had been, was barred by the statute as to these defendants, and that defense was set up in the answers.

The twenty-eighth section of the lien act declares that "no creditor shall be allowed to enforce the lien created under the foregoing provisions, as against or to the prejudice of any other creditor or incumbrancer or purchaser, unless suit be instituted to enforce such lien within six months after the last

payment for labor or materials shall have become due and pay-
able," and as to parties brought in by amendment of the peti-
tion, suit is begun only at the time the amendment is made.
Dunphy v. Riddle, 86 Ill. 22; Crowl v. Nagle, 86 Ill. 437;
McGraw v. Bayard, 96 Ill. 146.

But it is insisted on behalf of appellant that neither of these
last named defendants is a creditor, incumbrancer or purchaser,
within the meaning of the statutes; that the deed referred to
is substantially a general assignment, and, being for the benefit
of only one creditor and without inventory or bond, is in
violation of the act approved May 22, 1877, concerning volun-
untary assignments, and therefore void; and that, if not void,
the assignees are but naked trustees for the assignor—mere
volunteers standing in his shoes, and therefore no more pro-
tected than he by this Statute of Limitation; and that the party
for whose benefit it was intended, though in fact a creditor,
yet, not being a party to the deed, is in no better position.

It has, indeed, been held that the assignee named in the vol-
untary assignment for the benefit of creditors, is not a *bona
fide* purchaser, and that he represents the assignor and not
the creditors in respect to the title of the property assigned.
O'Hara v. Jones, 46 Ill. 288, and cases cited; Eames v. Mayo,
6 Ill. App. 334; Milligan v. O'Connor, 19 Ill. App. 493-4, and
cases there cited. The effect of these decisions clearly is that
the assignee takes subject to all existing liens against the
assignor, whether he has notice of them or not. But, subject
to them, he does take the legal title and interest of the as-
signor in the property expressed to be assigned, if the instru-
ment is otherwise valid. Nothing more is here claimed by
these defendants. They concede the priority of appellant's
lien so long as he had it, if he ever had it, and that it might
have been enforced as against them if suit had been instituted
for that purpose in due time; but if they have any interest
in the property, although it was once subject to his, it must
be as purchasers, incumbrancers or creditors, and now pro-
tected against it by the statute for his default. This protec-
tion is not limited to purchasers for value. Appellant's lien,
if any he had, was of grace and not of right, in derogation of

Haines v. Chandler.

the common law, and enforceable only in the cases and upon the conditions prescribed by the statute.   As in other chancery proceedings, all persons having an interest in the subject-matter must be made parties in order to be bound by the decree, and parties in interest within the meaning of the act are declared by section 13 to "include all persons who may have any legal or equitable claim to the whole or any part of the premises upon which a lien may be attempted to be enforced under the provisions of this act."   The apparent legal and equitable claim of these defendants, respectively, was recognized by the appellant in making them parties.

The question, then, is simply whether this deed was void because not in conformity with the requirements of the act referred to, concerning voluntary assignments.   It is clearly not in conformity with those requirements, and the question is, therefore, further reduced to the inquiry whether it is a voluntary assignment, within the meaning of that act.   It certainly does not purport to be an assignment of all the property of the grantor, nor for the benefit of all his creditors, but of one only; and the evidence shows it did not, in fact, embrace all his property, nor all that was exempt from execution, though undoubtedly intended to embrace the bulk of it, and comparatively little, certainly not enough to satisfy the claims of other creditors, was omitted.   But it was an absolute assignment of all the property therein mentioned, reserving nothing for the use or benefit of the assignor; and it was averred and proved that it was of value insufficient to satisfy the indebtedness on which its proceeds were to be applied; so that nothing could remain to his use or benefit, or which could be controlled or disposed of by him to the hindrance or delay of other creditors.

The act concerning voluntary assignments does not oblige every insolvent debtor to make a general assignment in conformity with its provisions, in order to appropriate his estate, or any specific portion of it, to the payment of a particular debt, nor prevent his preference of a particular creditor, by any means that were previously lawful, excepting only a general assignment for the benefit of creditors.   He may confess a

judgment, execute a mortgage, legal or equitable, or turn out all or any of his specific property at an agreed valuation, if done in good faith, for the satisfaction of one debt, though others should be thereby left unprovided for.

In this case the conveyance or assignment, as counsel calls it, was absolute in terms, reserving no interest to the grantor. It was not a transfer nor an attempted transfer of all his property, but only of certain items specifically described, and was of value, in all, largely less than the debt on which its proceeds were to be applied. The creditor was a national bank which was itself insolvent and in the hands of a receiver; so that property could not be accepted in payment at any agreed valuation. It must, therefore, be converted into money. A disinterested party should be selected to do it, in order that the creditor might receive its full value and so as much of the debtor's estate as possible be left for the satisfaction of other claims, and that he might get all the credit to which he would be entitled. The value of the property being less than the amount of the debt, a formal mortgage would be inapplicable and a special trust deed would be appropriate. Other creditors would have no interest in the disposition of it except to see that it should bring its fair value, for there could be no surplus; nor could the creditor receive any benefit from it except by its application to and extinguishment of his honest debt so far as its proceeds would reach.

Regarded, then, as an equitable mortgage, or a special trust by which specific property of the debtor was devoted to the payment of a particular debt, we think it was not within the act concerning voluntary assignments; nor do we discover in it any provision under which other creditors would be fraudulently hindered or delayed, so as to bring it within the statute of frauds or any other rule of law which would avoid it. The decree will, therefore, be affirmed.

*Decree affirmed.*

*Note.*—E. D. C. Haines v. James E. Chandler. PLEASANTS, J. This was a petition by appellant for a lien for lumber furnished for the erection of the Normal College. The case is substantially like the above case of Haines v. Chandler, and will be disposed of in like manner.